AMERICAN CENTRAL MFG. CORP. *v.* REVIEW BOARD OF INDIANA EMPLOYMENT SECURITY DIVISION, ET AL.

[No. 17,933. Filed October 31, 1949.]

*Schortemeier, Eby & Wood,* of Indianapolis; *John J. Grealis,* of Chicago, Illinois; *Robert K. Eby* and *F. E. Schortemeier* (of counsel), both of Indianapolis, for appellant.

*J. Emmett McManamon,* Attorney General, *James A. Watson,* Deputy Attorney General, and *Glen F. Kline,* Chief Counsel, for Indiana Employment Security Division.

ROYSE, J.—This is an appeal from an award of the Review Board of the Indiana Employment Security Division. The appellant was the employer of the individual appellees. (Hereinafter the appellant will be referred to as the employer, the individual appellees as the employees, and the other appellee as the Board.)

The employer and the employees had entered into a written collective bargaining agreement by the terms of which Local No. 151 of the U.A.W. acted as agent of the employees. The dispute herein arose over the construction of the following provisions of the collective bargaining agreement:

Article XIII—

Section 1 provides that all employees who, as of June 1, have completed one year or more of seniority shall be eligible to receive vacation pay, based on their length of seniority.

Section 3 provides as follows: "All vacations shall be taken between June 1, and December 31, of each year, and must be arranged for in advance with the foreman."

Section 6 provides as follows: "Vacation time preference shall be given to employees with the greatest seniority, whenever possible."

Article XIV—

Section 1, provides as follows: "The management of the Company's plants and the direction of the working forces, including the right to hire, discipline, suspend, discharge or transfer for proper cause or lack of work or for other legitimate reasons, is vested exclusively in the Company, provided that this will not be used for purpose of discrimination against any members of the Union, and provided further, that it does not conflict with any of the provisions of the agreement."

The contract further provided for the arbitration of grievances arising under the contract.

The facts from which the dispute arose are not in dispute and may be summarized as follows:

On April 17, 1948 the employer posted the following notice in the plant:

"The entire factory and office will be closed for a two-week vacation period, starting August 9th and ending August 21st.

"All employees needed for any work during that period will be notified by their supervisors, and these employees can make arrangements with their supervisors to take their vacations later.

"This notice is being given far enough in advance so that all employees who are eligible for a vacation will have an opportunity to make their plans accordingly."

Subsequently the following notice was posted by the employees bargaining agent:

"NOTICE

MEMBERS OF UAW-CIO, LOCAL No. 151

YOUR LOCAL UNION OFFICE, 111½ E. 5th St.

WILL BE CLOSED

DURING THE TWO WEEKS' VACATION PERIOD

AUGUST 9th TO 21st INCLUSIVE

REOPENING . . . AUGUST 23rd AT 8:00 A. M.

NEXT REGULAR SCHEDULED MEETING—
August 25th

NEXT REGULAR STEWARD'S MEETING—
September 15th

A. C. Herbstreit, Secretary."

Before the vacation period commenced the employer paid or made available to each employee for vacation pay, a check for approximately $115.71. A majority of the appellees accepted their checks. In June, 1948, one of the employees told his foreman he would like to have his vacation in November if possible.

On July 26, 1948, the employees filed their claims for unemployment benefits for the weeks ending August 14th and August 21st, 1948. The employees alleged in their claims that they refused to accept the vacation pay checks which were offered to them by appellant in advance of the vacation period, because they did not choose to take their vacations during the two weeks ending August 14th and August 21st, 1948. The employer filed a statement of objections to the claims and contended that the said appellees were not unemployed during said period; that remuneration in the form of vacation pay was available for them in an amount in excess of allowable benefits; that it had the right to

close its plant during said period and, further, that such available remuneration was deductible income to said claimants. A hearing was conducted on October 8, 1948 by the Referee, who heard evidence on the claims; a decision was rendered by him against the employees. The employees appealed to the Board and it (one member dissenting) reversed the Appeals Referee and made an award in favor of appellees.

The fundamental purpose of our Employment Security Act is to alleviate the menace to the health, welfare, morale and public order of the individual and the people generally which is brought about by the loss of wages or income from personal services when an employee is involuntarily out of employment. Burns' 1933 (1947 Supp.), § 52-1525; *Walter Bledsoe Coal Co. et al.* v. *Review Board* (1943), 221 Ind. 16, 21, 46 N. E. 2d 477; *White* v. *Review Board of Indiana Employment Security Division* (1944), 114 Ind. App. 383, 52 N. E. 2d 500. To accomplish this humane purpose a fund is established by the Act from which benefits are paid to those eligible therefor under its provisions.

Section 52-1527, Burns' 1933 (1947 Supp.), provides as follows:

> "An individual shall be deemed 'totally unemployed' in any week in which he was available for work but with respect to. which no remuneration was payable to him for personal services."

Section 52-1532a, Burns' 1933 (1947 Supp.), provides:

> "The term 'employment' shall include: . . .
> (f) Periods of vacation with pay or leave with pay, . . ."

Section 52-1528, Burns' 1933 (1947 Supp.), provides, in part:

"'Remuneration,' wherever used in this act, unless the context clearly denotes otherwise, means all compensation for personal services, including, but not limited to, commissions, bonuses, dismissal pay, vacation pay."

It cannot be denied that generally an employer has the right to determine the vacation period of his employees. Of course he may, by contract, restrict or relinquish that right. In the instant case, by its contract with the agent of the employees, the employer limited his right to determine the time in which vacations could be taken to the period between June 1st and December 31st. The provision of Sec. 3, Article XIII of the agreement, that arrangements for vacation must be made in advance with the foreman, is a recognition that an employee did not have the right to be the sole arbiter of when, during such period, he could take his vacation. The provision of Sec. 6 of the same Article that *"whenever possible"* vacation time preference shall be given to the employees with the greatest seniority, does not give such preferred employees the sole and exclusive right to determine the time they will take their vacation. On the contrary, we are of the opinion that when this section is construed with Sec. 1 of Article XIV, it means that if the parties to the agreement could not mutually agree on the time for vacations the employer had the right to make such determination. The notice posted by the Union announcing it would be closed during this period indicates to us that it, as the agent of the employees, acquiesced in this action of the employer. Furthermore, it is to be remembered that under the terms of the agreement, if the employees or their duly authorized agent felt they were aggrieved by the action of the employer in this instance, they could have protested

this action in the manner provided for therein. It is significant that neither the employees herein nor their agent took such action.

It is undisputed that a majority of the employees herein received and accepted vacation pay in the sum of $115.71, and a like sum was at all times ready and available to each of the other employees herein. We know judicially this was far in excess of the unemployment benefits payable for the period to those who, under the Act, would be entitled to such benefits.

It is conclusively shown by the record herein that during the period in question the employees had received or there was available for them remuneration as vacation pay. They suffered no loss of wages and therefore have not brought themselves within the class for whose benefit the law was enacted. Under such circumstances the award must be reversed.

NOTE.—Reported in 88 N. E. 2d 256.